**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Robert V. Towle


      v.                           Civil No. 06-cv-464-PB


Commissioner, New Hampshire
Department of Corrections, et al.


**REPORT AND RECOMMENDATION**


Pro se plaintiff Robert V. Towle brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution (document no. 1).[1]  Named as defendants are William Wrenn, Commissioner of the New Hampshire Department of Corrections ("NHDOC"), Bruce Cattell, Warden of the New Hampshire State Prison ("NHSP") and Greg Crompton, Deputy Warden of the NHSP.

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  See 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule

---

[1]At this stage of the proceedings Towle has not requested preliminary injunctive relief.

("LR") 4.3(d)(2).  For the reasons stated below, I conclude that Towle has stated a First Amendment claim against Wrenn, Cattell and Crompton.  I recommend dismissal of all remaining claims.

### Standard of Review

In reviewing a pro se complaint, this Court must construe the pleadings liberally and in favor of that party.  See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by a plaintiff and the inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration. See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988). I apply this standard in reviewing Towle's complaint.

### Background

Towle is currently incarcerated at the NHSP.  He brings this action alleging that Wrenn, Cattell and Crompton imposed restrictions on his inmate visitation privileges in violation of his First Amendment right to intimate association and his Eighth

2

Amendment right to be free from cruel and unusual punishment.  He further alleges that Crompton responded to his administrative grievance filed with Wrenn, in violation of his Fourteenth Amendment right to due process.

This action stems from NHSP regulations[2] that allegedly

---

[2]NHDOC Policy and Procedure Directive ("PPD") 7.09 IV, I(1) provides:

> Inmates must request that a prospective visitor be placed on the approved visitor list at least 14 days prior to that person visiting.

NHDOC PPD 7.09 IV, I(4) provides:

> Potential visitors with criminal records or who are on probation/parole will not be granted visiting privileges.  A direct family member (father, mother, sister, brother, child, spouse, aunts, uncles, grandparents, sister-in-law or brother-in-law) of an inmate who is also on probation/parole may be authorized to visit only with the written approval of the Warden and the supervising PPO.  Potential visitors with drug convictions within the last five years and/or confinement for any offense within the last five years will be excluded.  Exception to this policy may be made by written appeal to the Warden.  Any articulable risk to security will exclude a visitor.

NHDOC PPD 7.09 IV, I(5) provides:

> A visitor cannot appear on more than one inmate's approved visitor list unless the

exclude Towle's wife, Katie Wilmot, and his stepson, Cooper, from his visitor list.  As a result of this exclusion, Towle allegedly has been denied visits with Wilmot, Cooper and Carter.  Carter is the biological child of Towle and Wilmot.  Cooper is the biological child of Wilmot and Kerry Kidd, another inmate currently incarcerated at the NHSP.  On July, 12, 2006, Wilmot was denied approval to be placed on Towle's visitor list because of her criminal history.  The record reveals that Wilmot was convicted of theft by unauthorized taking from Wal-Mart and was sentenced to two years probation, restitution and a ten-year window of good behavior.  There is no indication that she was convicted of any drug offense or subjected to any period of confinement.

Towle filed an appeal with Cattell in which he identified Wilmot as his wife and requested that she and Cooper be placed on his visitor list.  Cattell denied the appeal on August 28, 2006,

_____

inmates are related to each other and the visitor is under the immediate family description.  Immediate family for the purpose of this policy means, mother, father, children, spouse, brother, sister, grandparents, aunts, uncles, sister-in-law and brother-in-law).

4

stating that Wilmot's felony conviction was only three years old and that her marital status was irrelevant.  Cattell permitted Carter to visit Towle under two conditions: (1) that Carter be accompanied by an approved adult; and (2) that Wilmot provide written and notarized permission for the child to visit.  Cattell advised Towle to maintain his relationship with Wilmot through letters and collect telephone calls.

On September 3, 2006, Towle filed an appeal with Wrenn, the Commissioner of the NHDOC, in which he requested that Wilmot and Cooper be placed on his visitor list and that an exception be made to NHSP policy because the benefit of their visit would outweigh any security risk.  Crompton denied the request on September 13, 2006, explaining that Wilmot's "conviction does not meet the [five-year] requirement."  Towle filed an appeal with Crompton on September 28, 2006, stating that the five-year requirement under PPD 7.09, I(4) should not apply to Wilmot because she was neither convicted of a drug offense nor confined. Towle further stated that Crompton violated his right to due process by responding to a grievance that was filed in a sealed envelope and directed to Wrenn.  Crompton responded on October 9, 2006, explaining that he had "delegated authority to respond to

all Commissioner level appeals and grievances" and again denied
Towle's appeal.

In a letter of October 13, 2006 addressed to Wrenn, Wilmot
explained her criminal history and essentially reiterated the
requests made by Towle.  She added that her son Cooper was
excluded from Towle's visitor list because of his placement on
Kerry Kidd's visitor list.  According to Wilmot, Towle "has
played quite a significant role in [Cooper's] life since birth."
Crompton responded on October 30, 2006, stating that "Warden
Cattell's letter of August 28, 2006 stands."

Towle filed another appeal with Cattell on November 4, 2006,
reiterating his argument that the five-year requirement under PPD
7.09, I(4) should not apply to Wilmot because she was never
convicted of a drug offense or subjected to a period of
confinement.  Cattell responded on November 8, 2006, explaining
that PPD 7.09, I(4) "excludes two categories but it does not
indicate that people who were convicted of other felonies or
received suspended sentences will be approved as visitors.  When
I responded to you on 8/28/06 I was aware of PPD 7.09.  What I
wrote to you then still stands today."  Towle filed an appeal
with Crompton on November 8, 2006, reiterating that Crompton

6

lacked authority to respond to his appeal and citing N.H. Rev. Stat. Ann. ("RSA") § 21-H:8 (setting forth the powers and duties of the NHDOC Commissioner, including the power to "delegate authority to subordinates as the commissioner deems necessary and appropriate, except that rulemaking authority shall not be delegated).  Crompton denied his request on November 16, 2006.

Towle now brings this Section 1983 action, alleging that defendants' acts and omissions rise to the level of constitutional deprivations under the First, Eighth and Fourteenth Amendments.

Discussion

I.  <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  <u>See</u> 42 U.S.C. § 1983; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); <u>accord</u> <u>Conn v. Gabbert</u>, 526 U.S. 286, 290 (1999).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  The premise of Towle's Section 1983 action is

7

that defendants violated his First Amendment right to intimate
association, his Eighth Amendment right to be free from cruel and
unusual punishment and his Fourteenth Amendment right to due
process.

    A.   First Amendment Claim

    Towle alleges that Wrenn, Cattell and Crompton imposed
restrictions on his inmate visitation privileges in violation of
his First Amendment right to intimate association.

    "Lawful incarceration brings about the necessary withdrawal
or limitation of many privileges and rights, a retraction
justified by the considerations underlying our penal system."
Price v. Johnston, 334 U.S. 266, 285 (1948).  However, a prisoner
"retains those First Amendment rights that are not inconsistent
with his status as a prisoner or with the legitimate penological
objectives of the corrections system.  Pell v. Procunier, 417
U.S. 817, 822 (1974).  In Overton v. Bazzetta, 539 U.S. 126, 133–
34 (2003), the Supreme Court addressed the issue of whether
restrictions on an inmate's visitation privileges violated the
First, Eighth and Fourteenth Amendments.  The Court stated "[w]e
do not hold, and we do not imply, that any right to intimate

association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners." Id. at 131. Thus, the Court "assumed that prisoners retain some right of intimate association while incarcerated." King v. Frank, 328 F. Supp. 2d 940, 945 (W.D. Wis. 2004)(citing Overton, 539 U.S. at 126).

In determining whether a regulation affecting a prisoner's constitutional right survives a constitutional challenge, the Court stated that four factors are relevant:

> "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation."

See Overton, 539 U.S. at 132 (quoting Turner v. Safely, 482 U.S. 78, 89-91 (1987)).

In this action, Towle appears to allege that the restrictions imposed on his visitation privileges are unreasonable and in contravention of NHSP policy. Construed liberally, the complaint alleges that defendants have misapplied NHDOC PPD 7.09 IV, I(4), which provides in relevant part:

> Potential visitors with criminal records or who are on probation/parole will not be granted visiting

9

privileges.  A direct family member . . . of an inmate
who is also on probation/parole may be authorized to
visit only with the written approval of the Warden and
the supervising PPO.  Potential visitors with drug
convictions within the last five years and/or
confinement for any offense within the last five years
will be excluded.  Exception to this policy may be made
by written appeal to the Warden.  Any articulable risk
to security will exclude a visitor.

Defendants allegedly have excluded Wilmot solely on the
basis that she failed to meet the five-year requirement under PPD
7.09, even though she was never convicted of a drug offense or
subjected to a period of confinement.  Even assuming that
defendants properly applied PPD 7.09, they have not identified a
legitimate governmental interest in banning Wilmot on the basis
of her theft conviction.  Nor have they identified any
articulable risk in placing her on Towle's visitor list.  While
defendants have suggested alternative means to the regulation,
namely that Towle communicate with Wilmot by telephone and mail,
Towle contends that the alternatives are insufficient for
maintaining his family bonds with his wife, son and stepson.
Accepting Towle's allegations as true, I cannot conclude that
defendants have properly applied NHSP policy or identified a
legitimate penological reason for restricting Towle's visitation
privileges.  Accordingly, I conclude that Towle has alleged

sufficient facts to a state cognizable First Amendment claim
against Wrenn, Cattell and Crompton.

     B.   Eighth Amendment Claim

     Towle alleges that the restrictions imposed on his
visitation privileges constitute a cruel and unusual condition of
confinement in violation of his Eighth Amendment rights.

     In Overton, the Supreme Court held that the withdrawal of
visitation privileges for a limited period of time does not
create inhumane prison conditions, deprive inmates of basic
necessities, or fail to protect their health or safety; nor did
the temporary withdrawal of such privileges involve the
infliction of pain or injury, or deliberate indifference to the
risk that it might occur.  See Overton, 539 U.S. at 137
(citations omitted).  However, "[i]f the withdrawal of all
visitation privileges were permanent or for a much longer period,
or if it were applied in an arbitrary manner to a particular
inmate, the case would present different considerations."  Id.

     Here, Towle alleges that defendants have denied visitation
rights only to his wife and stepson.  He does not allege a total
denial of visits, such as denial of visitation to all family
members.  In addition, the record indicates that the ban is

11

imposed for a five-year period that will expire in less than one year. Because the restrictions imposed on Towle's visitation privileges do not constitute a complete and permanent ban and do not appear to be arbitrarily imposed, I find that he has failed to allege an Eighth Amendment claim. While the restrictions make his confinement more difficult to bear, they do not fall below the standards mandated by the Eighth Amendment. See Overton, 539 U.S. at 136-37. Accordingly, I conclude that Towle has failed to state a cognizable Eighth Amendment claim and recommend that this claim be dismissed in its entirety.

        C.    Fourteenth Amendment Claim

        Towle alleges that Crompton denied him due process in violation of his Fourteenth Amendment rights. With regard to Towle's September 3, 2006 appeal filed with Wrenn, Crompton allegedly "intercepted and prevented the appeal from occurring, thereby denying [Towle] his procedural due process."

        The record reveals that Wrenn delegated authority to Crompton to rule on administrative appeals and grievances. Thus, Crompton's subsequent review and denial of Towle's appeal does not rise to the level of a Fourteenth Amendment due process violation. "While the filing of grievances is constitutionally

protected, the manner in which grievance investigations are conducted do not create a protected liberty interest." Odom v. Poirier, 99-Civ.-4933 (GBD), 2004 WL 2884409 at *10 (S.D.N.Y. Dec. 10, 2004) (citing Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("[p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment.").  Nor does an inmate have a federally protected right to have his grievances resolved to his satisfaction.  Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005)(prisoner had no federally protected interest in having grievances resolved to his satisfaction).

Here, Towle does not allege that defendants denied him the opportunity to file an appeal or proceed through the prison's internal grievance system.  Instead, he merely alleges that Crompton, rather than Wrenn, reviewed his appeal and issued an adverse ruling.  Towle's dissatisfaction with Crompton's review of his appeal and the adverse ruling do not constitute a liberty interest protected by the Fourteenth Amendment.  Accordingly, I conclude that Towle has failed to state a cognizable due process claim under the Fourteenth Amendment and recommend dismissal of this claim in its entirety.

13

II.  <u>Official Capacity</u>

Construed liberally, the complaint seeks prospective injunctive relief, and reimbursement of fees associated with Towle's complaint, for wrongs committed by the Wrenn, Cattell and Crompton as state actors in their official capacities.

It is well-settled that Eleventh Amendment immunity bars a federal court from awarding monetary damages against state officers sued in their official capacities.  <u>See</u> <u>Redondo-Borges v. United States HUD</u>, 421 F.3d 1, 7 (1st Cir. 2005).  However, Eleventh Amendment immunity does not bar claims for prospective injunctive relief against state officers in their official capacities.  <u>Id.</u> "Nor does that doctrine bar relief (whether in the form of money damages or an injunction) against [state officers] in their individual capacities.  <u>Id.</u> (citations omitted).  Thus, to the extent Towle seeks prospective injunctive relief against defendants in their official capacities, I conclude that his claims are not barred under the Eleventh Amendment.

<u>Conclusion</u>

For the reasons stated above, I conclude that Towle has stated a First Amendment claim against Wrenn, Cattell and

14

Crompton.   I recommend dismissal of all remaining claims.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.   If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.   See 28 U.S.C. § 636(b)(1); Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13–14 (1st Cir. 1992); United States v. Valencia–Copete, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date: February 5, 2007

cc:   Robert V. Towle, pro se