UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Robert V. Towle

    v.                        Civil No. 06-cv-464-JL
                                Opinion No. 2008 NH 101
New Hampshire Department
of Corrections, Commissioner,
et al.


**O R D E R**

Pro se petitioner Robert V. Towle brought this civil rights action under 42 U.S.C. § 1983 against the Commissioner of the Department of Corrections (DOC), as well as the Warden and Deputy Warden of the New Hampshire State Prison, alleging violations of his rights under the First Amendment of the United States Constitution.[1] The First Amendment right in question is the freedom of association involving visitation by Towle's wife. This court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

The respondents moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Towle's claims for injunctive and declaratory relief are moot. See Fed. R. Civ. P. 12(b)(6).

---

[1] Towle's initial complaint also alleged violation under the Eighth and Fourteenth Amendments. Those claims were dismissed, without objection by Towle, upon the recommendation of the Magistrate Judge. Towle v. N.H. Dept. of Corrections, No. 06-cv-464-PB, slip op. at 14-15 (D.N.H. Feb. 5, 2007).

Because the parties, and in particular the respondents, have presented matters outside the pleadings, the court will treat the motion as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d) (2008).  After a hearing on the motion, for the reasons set forth below, the court finds that Towle's claims are moot, and grants summary judgment in favor of the respondents.

## I.   APPLICABLE LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a motion for summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2008) (amended December 1, 2007); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (decided under prior version of the rule); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (decided under prior version of the rule).  "The object of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Dávila v. Corporación de P.R. Para la Difusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quotations omitted) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).

When as here[2] the party moving for summary judgment also bears the burden of proof at trial, summary judgment will not be granted unless, based on the record taken in the light most favorable to the nonmoving party, no reasonable jury could find for the nonmoving party. See E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 54-55 (1st Cir. 2002); Winnacunnet Coop. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 84 F.3d 32, 35 (1st Cir. 1996). To defeat a motion for summary judgment, "the non-moving party must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which she would bear the ultimate burden of proof at trial." Torres-Negron v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007) (quotations omitted). Further, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and "may not rest upon the mere allegations or denials of his pleading." Id. at n.11 (quotations omitted).

---

[2] The respondents have asserted the doctrine of mootness as an affirmative defense. Since they carry the burden of proving this defense at trial, they carry the burden on this motion.

**II.   BACKGROUND**

This action stems from DOC regulations[3] that allegedly excluded Towle's wife, Katie Wilmot, from his NHSP visitor list.

---

[3] The version of New Hampshire Department of Corrections Policy and Procedure Directive ("PPD") 7.09 in effect at the time the complaint was filed provided, in pertinent part:

   IV.   PROCEDURE

. . . .

   I.   Visiting Lists

   1.   Inmates must request that a prospective visitor be placed on the approved visitor list at least 14 days prior to that person visiting.

. . . .

   4.   <u>Potential visitors with criminal records or who are on probation/parole will not be granted visiting privileges</u>.  A direct family member (father, mother, sister, brother, child, spouse, aunts, uncles, grandparents, sister-in-law or brother-in-law) of an inmate who is also on probation/parole may be authorized to visit only with the written approval of the Warden and the supervising PPO. . . . <u>Potential visitors with drug convictions within the last five years and/or confinement for any offense within the last five years will be excluded.  Exception to this policy may be made by written appeal to the Warden</u>.  Any articulable risk to security will exclude a visitor.

. . . .

   5.   A visitor cannot appear on more than one inmate's approved visitor list unless the inmates are related to each other and the visitor is under the immediate family description.  Immediate family for the purpose of this policy means, mother, father, children, spouse, brother, sister, grandparents, aunts, uncles, sister-in-law and brother-in-law).

PPD 7.09 IV, I (1), (4), (5) (Feb. 15, 2006) (emphasis added).

As a result of this exclusion, Towle was denied visits with Wilmot. On July, 12, 2006, Wilmot was denied approval to be placed on Towle's visitor list because of her criminal history. The record reveals that Wilmot was convicted of theft by unauthorized taking from Wal-Mart and was sentenced to two years probation. There is no indication that she was convicted of any drug offense or subjected to any period of confinement.

Towle filed a second-level appeal with Warden Cattell in which he identified Wilmot as his wife and requested that she be placed on his visitor list. Cattell denied the appeal on August 28, 2006, stating that Wilmot's felony conviction was only three years old and that her marital status was irrelevant. Cattell advised Towle to maintain his relationship with Wilmot through letters and collect telephone calls.

On September 3, 2006, Towle filed a third-level appeal with Wrenn, the Commissioner of Corrections, in which he requested that Wilmot be placed on his visitor list and that an exception be made to NHSP policy because the benefit of their visit would outweigh any security risk. Greg Crompton, Commissioner Wrenn's designee to address such grievance appeals, denied the request on September 13, 2006, explaining that Wilmot's "conviction date

does not meet the [five-year] requirement."[4]  Towle filed another appeal with Crompton on September 28, 2006, stating that the five-year requirement under PPD 7.09 I(4) should not apply to Wilmot because she was neither convicted of a drug offense nor confined.  Crompton responded on October 9, 2006, explaining that he had "delegated authority to respond to all Commissioner level appeals and grievances" and again denied Towle's appeal.

In a letter of October 13, 2006 addressed to Wrenn, Wilmot explained her criminal history and essentially reiterated the requests made by Towle.  Crompton responded on October 30, 2006, stating that "Warden Cattell's letter of 8/8/06 stands."

Towle filed another appeal with Cattell on November 4, 2006, reiterating his argument that the five-year requirement under PPD 7.09 IV, I(4) should not apply to Wilmot because she was never convicted of a drug offense or subjected to a period of confinement.  Cattell responded on November 8, 2006, explaining that PPD 7.09 IV, I(4) "excludes two categories but it does not indicate that people who were convicted of other felonies or received suspended sentences will be approved as visitors.  When

---

[4] As established at the preliminary injunction hearing, Crompton's ruling was based on a misinterpretation of PPD IV, I(4) as it existed at the time.  See PPD IV, I(4) (Feb. 15, 2006).

I responded to you on this issue on 8/28/06 I was aware of PPD 7.09.  What I wrote to you then still stands today."

Towle filed an appeal with Crompton on November 8, 2006. Crompton denied his request on November 16, 2006.  Towle then brought this Section 1983 action, alleging that the respondents' acts and omissions rise to the level of constitutional deprivations.

In 2007, the Department of Corrections promulgated a new Policy and Procedure Directive 7.09, which superseded the version of PPD 7.09 in effect at the time Towle initiated suit.[5]  A

---

[5]  Effective as of May 15, 2007, the new PPD 7.09 provides provides as follows:

> IV.   PROCEDURE
>
> . . . .
>
> B.   Authorized Visitors
>
> DOC Staff must approve all visitors.  Inmates will be authorized an unlimited number of family members on their visiting list.  Non-family members will be limited in accordance with COR 305.02.
>
> Visitors being taken off an inmate's list will be removed immediately and cannot be added to any inmate's visiting list for a one-year period.
>
> . . . .
>
> I.   Visiting Lists
>
> . . . .
>
> 4.   Potential visitors with criminal records involving felony drug offenses within the last 10 years from date of conviction will

supplemental affidavit filed by the respondents asserts that under PPD 7.09 as amended above, Towle's wife has been deemed eligible to visit Towle and that Towle submitted an inmate visitor request slip in November, 2007.  As a result, Towle's wife was approved for visitation and made visits to Towle in

---

          not be allowed to visit.

5.    Potential visitors with criminal records involving misdemeanor drug offense within the last 5 years from date of conviction will not be allowed to visit.

6.    Potential visitors with pending drug related offenses (felony or misdemeanor) will be not allowed to visit.

7.    Potential visitors with a criminal history which resulted in confinement to a correctional facility for any offense within the last 5 years regardless of the duration of the confinement will not be permitted to visit.

8.    Potential visitors with any criminal record for non-drug related [sic] within 1 year from date of the most recent criminal conviction will be not be [sic] permitted to visit.

9.    Potential visitors who are on probation/parole will not be granted visiting privileges without the written recommendation of the supervising probation/parole officer and the written approval of the warden.  Consideration will be given for direct family members only (father, mother, sister, brother, child, spouse, aunts, uncles, grandparents, sister-in-law or brother-in-law).

PPD 7.09 IV(B), (I)(4)-(9) (2007).

November and December, 2007, and continued monthly visits beginning in January, 2008.

### III. ANALYSIS

#### A. The applicable law

Section 1983 creates a cause of action against those who, acting under the color of state law, violate federal law. See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986)); Conn v. Gabbert, 526 U.S. 286, 290 (1999). The premise of Towle's Section 1983 claim is that the respondents violated his First Amendment right to intimate association by placing impermissibly burdensome restrictions on his wife's ability to visit him in prison.[6]

The respondents argue that they are entitled to summary judgment because DOC has amended PPD 7.09 in such a way that permits his wife routine visitation in the same general manner

---

[6] Because, as set forth infra Parts III, IV, summary judgment is granted to the respondents on grounds that are primarily procedural, it is not necessary to analyze the merits of that claim. The court notes, however, that it concurs with the Magistrate Judge's ruling on Towle's motion for a preliminary injunction that, even under PPD 7.09 IV as it existed prior to the amendment described supra, Towle was "not likely to succeed on the merits of his First Amendment claim." (Towle, slip op. at 23). See generally, Overton v. Bazzetta, 539 U.S. 126, 131-32, 135 (2003).

available to all inmates' spouses.  This amendment, they argue, renders Towle's Section 1983 claim moot as a matter of law.

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  D. H. L. Assoc., Inc. v. O'Gorman, 199 F.3d 50, 54 (1st Cir. 1999) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)); Gulf of Maine Fisherman's Alliance v. Daley, 292 F.3d 84, 87 (1st Cir. 2002).  The seminal Supreme Court case on the mootness doctrine, as well as the exception to the doctrine involved in this case, is United States v. W. T. Grant Co., 345 U.S. 629 (1953).  There, the Court recognized "the abstract proposition that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot."  Id. at 897.  This is because a defendant who wins a mootness-based dismissal "is free to return to his old ways.  This, together with a public interest in having the legality of the practices as settled, militates against a mootness conclusion."  Id. (citing United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 309-310 (1897) (footnote omitted)).

The W. T. Grant court continued, however, that a "case may nevertheless be moot if the defendant can demonstrate that there

10

is no reasonable expectation that the wrong will be repeated." Id. at 633 (quotation and footnotes omitted).

> Thus, the standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent:  A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.  The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC, Inc.), 528 U.S. 167, 170 (2000) (citation omitted).

A legislative repeal or amendment of a statute in a manner that satisfies the plaintiff's complaints normally justifies a finding of mootness because the legislative change makes it unlikely that the wrong will be repeated."  1B Martin Schwartz, Section 1983 Litigation: Claims and Defenses § 15.04[B][2] at 15-23 and n.88 (3d ed. 2007) (citing examples of legislative and administrative agency amendments to laws, regulations and policies).  The First Circuit has recognized this corollary to the voluntary change exception to the mootness doctrine.  See, e.g., D.H.L. Associates, 199 F.3d at 54-55 (legislative amendments to offending ordinance rendered case moot).  It is of no consequence that the amendments in this case were made to rules and regulations as opposed to a statute or ordinance, and by an executive branch agency as opposed to a legislative body.

The corollary to the "voluntary cessation" exception applies nonetheless.  "The promulgation of new regulations and amendment of old regulations are among such intervening events as can moot a challenge to the regulation in its original form."  <u>Gulf of Maine</u>, 292 F.3d at 88 (involving New England Fisheries Management Council regulations).  "There is no question that a case can be mooted by promulgation of new regulations or by amendment or revocation of old regulations."  <u>Save Our Cumberland Mountains, Inc. v. Clark</u>, 725 F.2d 1422, 1432 n.27 (D.C. Cir. 1984).

    Under this framework of established law, the petitioner's case is moot.  The parties' respective filings, and the evidence taken at the preliminary injunction hearing establish that Towle's wife was denied visitation for two reasons:  (1) a mistaken belief by the prison administration that she had been convicted of a felony drug offense within a five year period prior to her request for visitation, and (2) a broad interpretation of the former PPD 7.09's presumptive prohibition of visitation by "potential visitors with criminal records" without giving due consideration to the warden's discretionary authority to allow visitation by immediate family members of prisoners, including those with criminal records.  The first ground for denial is irrelevant in this case.  It cannot be cured

through injunctive relief, and Towle's amended complaint makes no claim for money damages.

The second ground, however, was directly addressed by the amendments to PPD 7.09. As amended and currently effective, PPD 7.09 contains no presumptive prohibition against visits by those "with criminal records." It makes finer, more clearly defined distinctions among potential ineligible visitors, namely, those with drug-related offenses, ex-convicts, probationers, parolees, and individuals with recent convictions. It is thus, less subject to overbroad interpretation or outright misinterpretation. None of the above-listed distinctions provides a basis to deny visitation to Katie Wilmot. Wilmot, moreover, has been granted and currently enjoys visiting privileges with Towle at the prison. Thus, DOC's administrative overhaul to the applicable regulation, PPD 7.09, renders Towle's request for injunctive relief moot. See Gulf of Maine, 292 F.3d at 88 (new regulations can moot a challenge to a regulation in its original form); Jews for Jesus, Inc. v. Hillsborough County Aviation Auth., 162 F.3d 627, 629-30 (11th Cir. 1998) (county-based aviation authority's change in policy regarding literature distribution at airport rendered case moot); Free v. Landrieu, 666 F.2d 698, 702-04 (1st Cir. 1981) (reconsideration of interpretation of challenged amendment in light of other federal

13

regulations rendered case moot); McKenna v. Peekskill Housing Authority, 647 F.2d 332, 334 (2d Cir. 1981) (housing authority's administrative recision of challenged rule rendered case moot). All of these cases follow the Supreme Court's practice, whether the policy change was legislatively enacted or administratively promulgated, to evaluate claims for injunctive relief "in light of the [applicable law] as it now stands, not as it once did." Hall v. Beals, 396 U.S. 45, 48 (1969) (citing Thorpe v. Housing Authority, 393 U.S. 268, 281-82 (1969)).

A related argument not nominally advanced by Towle, yet nonetheless raised by the respondents, is whether, despite the administrative change to PPD 7.09, Towle's claims are "capable of repetition, yet evading review." Such claims will not be dismissed on mootness grounds. See e.g., Dionne v. Bouley, 757 F.2d 1344, 1348 (1st Cir. 1985).

If Towle's complaint contained a colorable, well-pleaded claim for damages under Section 1983, it is possible that that portion of his case may have survived a mootness challenge. His original complaint did in fact assert a claim for damages, but his amended complaint contains no such request, and is limited to injunctive and declaratory relief. As those claims are now

14

moot,[7] his entire action is subject to dismissal. Flittie, 724 F.2d at 82 (where prisoner's civil rights suit originally requested compensatory and punitive damages, but amended complaint requested only injunctive and declaratory relief plus costs, plaintiff had abandoned request for damages, and his case was moot); cf. Sutton, 323 F.3d at 249 (where prisoner's civil rights claims for declaratory and injunctive relief were dismissed under mootness doctrine, money damages claims survived despite prison's policy changes and transfer of plaintiff to different facility); but see Tawaab v. Metz, 554 F.2d 22, 24 n.4 (2d Cir. 1977) (where prisoner's equitable claims dismissed on mootness grounds, but complaint also contained a general demand for damages, entire case dismissed where "[a]ny award of damages on the facts of this case, as alleged in the complaint, would be so remote and speculative that it could not stand.").

---

[7] In both his summary judgment filings and at oral argument, the petitioner vigorously maintained that even if his equitable claims were dismissed as moot, he was nonetheless entitled to a jury trial on his claims for a declaratory judgment. He cites no authority to support this proposition, and there is abundant authority suggesting the opposite--that when equitable claims are dismissed as moot, the dismissal also covers claims for declaratory relief. See, e.g., Sutton v. Rasheed, 323 F.3d 236, 249 (3rd Cir. 2003); D.H.L. Assoc., 199 F.3d at 54; ; Jews for Jesus, 162 F.3d at 629-30; Pembroke v. Wood County, Tex., 981 F.2d 225, 228 (5th Cir. 1993); Flittie v. Erickson, 724 F.2d 80, 82 (8th Cir. 1983); Free, 666 F.2d at 704; McKenna, 647 F.2d at 334; Kerr v. Puckett, 967 F. Supp. 354, 363 (E.D.Wis. 1997) (aff'd 138 F.3d 321 (7th Cir. 1998).

> To come within this exception [to the mootness
> doctrine, a plaintiff must establish] . . . two
> elements: (1) the activity being challenged must,
> by its nature, be of such short duration that it
> is unlikely to be fully litigated before its
> cessation or expiration, and (2) there must be a
> reasonable expectation that the same complaining
> party will be subjected to the same acts again.

Id., (citing Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Loeterman v. Town of Brookline, 709 F.2d 116, 118 (1st Cir. 1983)) (bracketed language added). The applicability to this case, however, of the legislative/administrative modification exception to the "voluntary cessation" rule demonstrates that the plaintiff's claims are not capable of repetition while evading review. See Tawwab v. Metz, 544 F.2d at 23-24 (where change in prison policy was "embodied in an official prison document" presented to the court, it was "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur") (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)).

**IV.	CONCLUSION**

For the reasons set forth above, the respondents are awarded summary judgment on all claims under the mootness doctrine. After requesting and receiving special briefing on the issue, the court further concludes that neither party is entitled to costs under 42 U.S.C. § 1988 (2003) or Fed. R. Civ. P. 54(d)(1).  See Buckhannon Board and Care Home, Inc. v. W. Va. Dept. of Health and Human Resources, 532 U.S. 598, 604-06.  All other pending motions are denied as moot.  The Clerk is directed to close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:   May 14, 2008

cc:  Robert V. Towle, pro se
     Glenn A. Perlow, Esq.